IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF INDIANA, Plaintiffs, v. INGREDION INCORPORATED, Defendant. | Civil Action No. 23-2111 |

## COMPLAINT

The United States of America, by and through its attorneys, by authority of the Attorney General of the United States and acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana ("State" or "Indiana"), by authority of the Attorney General of Indiana, acting at the request of the Indiana Department of Environmental Management ("IDEM") (collectively, "Plaintiffs") allege the following:

### NATURE OF ACTION

1.       This civil action comprises the United States and Indiana's claims against Ingredion Incorporated ("Defendant" or "Ingredion") arising from the operation of its corn wet milling facility in Indianapolis, Indiana ("Indianapolis Facility").

2.       The United States asserts claims under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), seeking injunctive relief, mitigation, and the assessment of civil penalties for violating Title V of the CAA, 42 U.S.C. § 7661 *et seq.*, and its implementing regulations.

1

3.      Indiana asserts claims in this action under Title 326 of the Indiana Administrative Code ("IAC"), seeking injunctive relief, mitigation, and civil penalties for violating IAC Title 326 and the rules adopted thereunder. Indiana also asserts claims under Section 304(a)(1) of the CAA, 42 U.S.C. § 7604(a)(1), and Ind. Code § 13-30-3-3.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

5.      Venue is proper in this district under CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a) because the Defendant resides and is found in this district and because the violations occurred within this district.

6.      This Court has supplemental jurisdiction over Indiana's State law claims under 28 U.S.C. § 1367(a), because the State claims are related to the federal claims and form part of the same case or controversy.

## PARTIES

7.      Authority to bring this action for the United States is vested in the Attorney General of the United States under 28 U.S.C. §§ 516 and 519 and CAA Section 305, 42 U.S.C. § 7605.

8.      Authority to bring this action for the People of the State of Indiana is vested in the Indiana Attorney General. The Indiana Attorney General is the chief legal officer of the State of Indiana having the powers and duties prescribed by law, I.C. § 4-6-1-6. Under Indiana Code § 13-13-5-1(3), IDEM is charged with the administration and enforcement of the requirements for air pollution for Indiana for all purposes of the CAA.

9.      Defendant Ingredion is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Indiana.

10.     Ingredion is the owner and operator of the Indianapolis Facility within the meaning of CAA Section 112(a)(9), 42 U.S.C. § 7412(a)(9), and its implementing regulations, and the Indiana Administrative Code, codified at 326 IAC 1-2-51.

11.     Ingredion is a "person" as defined in CAA Section 302(e), 42 U.S.C. § 7602(e).

## NOTICES

12.     In accordance with CAA Section 113(a), 42 U.S.C. § 7413(a), EPA notified Ingredion and the State of Indiana of the violations of the Indianapolis Facility's Title V Permit alleged in this Complaint more than 30 days prior to its filing.

13.     In accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), notice of the commencement of this action has been given to IDEM.

## STATUTORY AND REGULATORY BACKGROUND

### A.      NAAQs and PSD Program

14.     CAA Section 108(a), 42 U.S.C. § 7408(a), requires the Administrator to publish a list of air pollutants that cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, resulting from mobile or stationary sources in order to establish primary and secondary national ambient air quality standards ("NAAQS").

15.     Under CAA Section 108(a), 42 U.S.C. § 7408(a), EPA has identified, *inter alia*, particulate matter ("PM"), including particulate matter with an aerodynamic diameter less than or equal to a nominal ten micrometers ("PM$_{10}$"), as such pollutants. *See* 40 C.F.R. § 50.6.

16.     CAA Section 108(b) requires the Administrator to issue air quality criteria for those pollutants on the list. 42 U.S.C. § 7408(b).

17.     CAA Section 109(a), 42 U.S.C. § 7409(a), requires the Administrator to publish primary and secondary NAAQS for the criteria air pollutants promulgated pursuant CAA Section 108, 42 U.S.C. § 7408. The NAAQS promulgated under this provision are set forth in 40 C.F.R. Part 50.

18.     PM and $PM_{10}$ are both "air pollutants" within the meaning of CAA Sections 108 and 302, 42 U.S.C. §§ 7408 and 7602.

19.     EPA has implemented regulations for the prevention of significant deterioration of air quality ("PSD"), codified at 40 C.F.R. § 52.21, to ensure that increased emissions of criteria pollutants, including $PM_{10}$, from stationary sources do not reduce air quality below the NAAQS. These regulations apply to new "major stationary sources" or to "major modifications" at existing sources.

20.     If a modification of a stationary source results in a "significant net emission increase," the modification will be considered a "major modification." If a stationary source undergoes a "major modification," or if it is otherwise considered a "major stationary source," PSD regulations may require the implementation of the best available control technology ("BACT"). Implementing BACT can require a significant capital investment. Stationary sources will routinely voluntarily reduce emissions in order to avoid being classified as "major," thus avoiding the PSD regulations and the potential implementation of BACT equipment. This voluntary emission limit is referred to as a "Synthetic Minor Limit."

### B.     State Implementation Plans

21.     Under CAA Section 110, 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for attainment, maintenance, and enforcement of the NAAQS. Under CAA Section 110(a)(2), each SIP must include a permit

program to regulate the construction and modification of any stationary source of air pollution as necessary to assure that NAAQS are achieved and maintained.

22.     Under CAA Section 110, 42 U.S.C. § 7410, Indiana adopted and submitted to EPA various regulations that EPA approved and which, taken together, constitute the SIP for the State of Indiana ("Indiana SIP"), which is codified at 326 IAC 5. 40 C.F.R. Part 52 Subpart P (40 C.F.R. § 52.769 *et seq*); 67 Fed. Reg. 46,589 (July 16, 2002).

23.     CAA Section 161, 42 U.S.C. § 7471, requires that each SIP contain a PSD program. Indiana's PSD program is found at 326 IAC 2-2-1 through 326 IAC 2-2-16. Indiana is authorized to issue and enforce PSD permits. In all respects relevant to this Complaint, the PSD regulations of Indiana closely mirror the federal PSD regulations codified at 40 C.F.R. § 52.21.

24.     At all relevant times herein, the EPA-approved Indiana SIP at 326 IAC 6.5-1-2 and 6.5-6-25 has established PM emission limits applicable to various sources at Ingredion's Indianapolis Facility.

25.     At all relevant times herein, the EPA-approved Indiana SIP at 326 IAC 8-3-2(a)(3) has required that the owner and operator of cold cleaner degreasers in Marion County using solvents containing more than 1% Volatile Organic Compounds ("VOCs") by weight close the cover whenever parts are not being handled in the degreaser.

### C.     Title V Operating Permit Requirements

26.     Title V of the CAA, Sections 501-507; 42 U.S.C. § 7661-7661f, and the regulations promulgated thereunder establish an operating permit program for certain sources emitting air pollutants. CAA Section 502(d)(1), 42 U.S.C. § 7661a(d)(1), requires that each state develop and submit to EPA an operating permit program that meets the requirements of Title V.

27.     Title V of the CAA requires "major sources" of air pollution to obtain an operating permit that includes emission limitations and such other conditions as are necessary to

5

assure compliance with applicable CAA requirements. *See* Sections 501-507 of the CAA, 42 U.S.C. §§ 7661, 76661(a)-(f). A Title V operating permit consolidates all of a major stationary source's state air pollution and federal CAA requirements into one permit.

28.     The term "major source" includes any group of stationary sources located within a contiguous area and under common control which directly emits, or has the potential to emit, one hundred tons per year ("tpy") or more of any air pollutant. 42 U.S.C. §§ 7661(2), 7602(j).

29.     A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

30.     Under CAA Section 502(b), 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V Permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32,250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

31.     The requirements of Part 70 apply to any major source located in a state that has received whole or partial approval of its Title V program. However, EPA retains the authority to enforce state-issued Title V Permits. See 42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

32.     Indiana received interim approval from EPA for its Title V Permit program in November 1995, effective December 1995, and final approval in December 2001. 60 Fed. Reg. 57,188 (1995) and 66 Fed. Reg. 62,969 (2001). Indiana's federally-approved Title V regulations are found at 326 IAC 2-7.

33.     Under 40 C.F.R. § 70.6(a)(3)(iii), IDEM is required to, among other things, incorporate all applicable reporting requirements into a Title V Permit.

34.     Rule 326 IAC 2-7-6 sets forth requirements by which a Title V source must demonstrate compliance, including submission of compliance certifications with terms and conditions contained in a Part 70 Permit.

35.     At all relevant times herein, the EPA-approved Indiana SIP at 326 IAC 2-8-4 and 2-8-5 has required Title V Permits to include monitoring and reporting procedures designed to ensure continuous compliance with the applicable emission limits. *See also* 40 C.F.R. § 70.6(a)(3)(i)(B).

36.     CAA Section 502(a), 42 U.S.C. § 7661a(a), the implementing regulations at 40 C.F.R. § 70.7(b), and Indiana's Title V Permit program regulations have at all relevant times made it unlawful for any person to, *inter alia*, operate a major source in violation of a Title V Permit or to operate any source subject to Title V except in compliance with a Title V Permit issued by a permitting authority under Title V of the CAA.

37.     EPA may enforce all terms and conditions in a Title V Permit. 42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

**D.     Federal and State Enforcement Provisions**

38.     Under CAA Sections 113(a)(1) and (3), 42 U.S.C. § 7413(a)(1) and (3), the EPA may bring a civil action in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the EPA, the EPA finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, a Title V Permit or any federally enforceable provision of the Indiana SIP.

39.     CAA Section 304(a)(1), 42 U.S.C. § 7604(a)(1), authorizes Indiana to commence a civil action against any person who is alleged to have violated an emission standard or limitation under the CAA.

40.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

41.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and under the Federal Civil Penalties Inflation Adjustment Act of 1990, the United States may seek civil penalties of up to $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and up to $117,468 per day for each such violation that occurred after November 2, 2015. 40 C.F.R § 19.4.

42.     Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

43.     CAA Section 113(e)(2), 42 U.S.C. § 7413(e)(2), provides that penalties shall continue to accrue until the violator establishes that continuous compliance has been achieved.

## GENERAL ALLEGATIONS

44.     The Indianapolis Facility, located at 1515 South Drover Street, Indianapolis, Marion County, Indiana, produces feed, gluten meal, germ meal, and heavy steepwater.

45.     At all relevant times herein, Ingredion has been the "owner" and "operator" of the Indianapolis Facility within the meaning of CAA and the Indiana SIP. *See*, *e.g.*, 42 U.S.C. §§ 7413(b), 7661a; 40 C.F.R. § 60.2; 326 IAC 1-2-51.

46.     The Indianapolis Facility is a "stationary source" under Sections 111(a) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a), 7602(z).

47.     The Indianapolis Facility is a "major source" of air pollutants under Sections 501(2) and 302(j) of the CAA, 42 U.S.C. §§ 7661(2) and 7602(j).

48.     The Indianapolis Facility has the "potential to emit" more than 250 tpy of PM and PM$_{10}$ within the meaning of 326 IAC 2-2-1(1) and 40 C.F.R. § 70.2.

49.     Control units including wet scrubbers, baghouses, and other pollution control devices control emissions from the Indianapolis Facility.

50.     In 1997, Ingredion installed a Feed Dryer (Unit 5502-1A), Germ Dryer (Unit 5502-1B), Gluten Dryer (Unit 5502-1C), and a Regenerative Thermal Oxidizer ("RTO") (Unit 5502-1D) (collectively, the "5502-1 dryer series").

51.     The 5502-1 dryer series emits various air pollutants including PM, PM$_{10}$ and VOCs.

52.     In order to avoid triggering PSD requirements, including the installation of BACT controls, Ingredion agreed to establish emission limits for the 5502-1 dryer series for PM$_{10}$ and VOCs. The City of Indianapolis issued a construction permit to Ingredion for installation of the 5502-1 dryer series, among other things, in 1997 ("1997 Construction Permit"). The 1997 Construction Permit contains Synthetic Minor Limits for PM$_{10}$ of 0.0114 gr/dscf, 4.533 lb/hr, and 19.855 ton/yr. The 1997 Construction Permit also contains Synthetic Minor Limits for VOCs of 4.89 lb./hr.

**Ingredion's Title V Permits**

53.     The Title V Permits relevant to this Complaint (collectively, "Ingredion's Title V Permits") include, but are not limited to, the following Title V Permits issued by IDEM on the following dates:

        a.      Permit No. 097-34377-00042, issued on January 22, 2015 ("January 2015 Permit");
        b.      Permit No. 097-35748-00042, issued on May 6, 2015 ("May 2015 Permit");
        c.      Permit No. 097-34650-00042, issued on September 22, 2015 ("September 2015 Permit");

d.      Permit No. 097-37105-00042, issued on June 8, 2016 ("June 2016 Permit");

e.      Permit No. 097-36989-00042, issued on October 14, 2016 ("October 2016 Permit");

f.      Permit No. 097-37637-00042, issued on May 4, 2017 ("May 2017 Permit");

g.      Permit No. 097-39102-00042, issued on November 13, 2017 ("November 2017 Permit");

h.      Permit No. 097-40627-00042, issued on January 8, 2019 ("January 2019 Permit");

i.      Permit No. 097-41858-00042, issued on February 18, 2020 ("February 2020 Permit");

j.      Permit No. 097-42340-00042, issued on October 6, 2020 ("October 2020 Permit"); and

k.      Permit No. 097-44290-00042, issued on November 9, 2021 ("November 2021 Permit").

54.     At all times relevant to this Complaint, the Indianapolis Facility has been subject to the requirements in Ingredion's Title V Permits.

55.     At all times relevant to this Complaint, Ingredion's Title V Permits have incorporated the Synthetic Minor Limits on Ingredion's emission of PM, $PM_{10}$, and VOCs from the 1997 Construction Permit.

56.     At all times relevant to this Complaint, Ingredion's Title V Permits have contained operational requirements, such as to measure specified operating parameters of certain pollution control devices and take reasonable response steps or corrective action when such parameters are out of specified ranges, for the Indianapolis Facility to limit excess emissions of pollutants.

57.     At all times relevant to this Complaint, Ingredion's Title V Permits have required Ingredion to submit quarterly reports to IDEM detailing deviations from its compliance with permit requirements.

58.     Ingredion has certified each quarterly report submitted from 2015 to the filing of this Compliant to be true, accurate, and complete.

10

E.      **Inspections, Information Requests and Notice of Violation**

59.      On June 30 and July 1, 2015, two IDEM personnel conducted an unannounced inspection of the Indianapolis Facility.

60.      On July 21, 2015, two environmental engineers from EPA Region 5 and an IDEM inspector returned to the Indianapolis Facility and conducted another unannounced inspection.

61.      On May 13, 2016, EPA issued a request for information to Ingredion under CAA Section 114. On July 15, 2016, Ingredion responded, noting that it had not conducted stack testing for some of its emission sources since 2001. On March 8, 2017, EPA issued a second request for information seeking emissions testing at three emission sources, including the 5502-1 dryer series.

62.      On May 23-24, 2017, Ingredion conducted stack tests that demonstrated, *inter alia*, that VOC emissions and $PM_{10}$ emissions from the 5502-1 dryer series exceeded its Title V permit limits.

63.      On September 21, 2017, EPA issued a Notice of Violation to Ingredion that included all of the violations alleged in this Complaint prior to that date. The allegations in this Complaint include similar violations that have been identified in Ingredion's quarterly reports through September 30, 2020.

64.      On May 31 and June 1, 2018, Ingredion conducted stack tests that demonstrated that $PM_{10}$ emissions from the 5502-1 dryer series exceeded its Title V permit limits.

**FIRST CLAIM FOR RELIEF**
**Title V Permit Violation: Particulate Matter Emission Exceedances**

65.      Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

66.      The 1997 Construction Permit and each of Ingredion's Title V Permits issued between 2015 and the present require Ingredion to limit the emissions at the Indianapolis

Facility's RTO stack (Unit 5502-7) from the Feed Dryer (Unit 5502-1A), Germ Dryer (Unit 5502-1B), and Gluten Dryer (Unit 5502-1C) of PM and $PM_{10}$ to no more than 0.0114 gr/dscf, 4.533 lb/hr, and 19.855 tpy. *See, e.g.*, May 2017 Permit, § D.1.1(a)(4).

67. Based on the results of performance tests performed at the RTO stack (Unit 5502-1D) in 2017 and 2018, on numerous occasions since March 1, 2015, Ingredion failed to limit the emissions from the Indianapolis Facility's RTO stack from the Feed Dryer (Unit 5502-1A), Germ Dryer (Unit 5502-1B), and Gluten Dryer (Unit 5502-1C) of $PM_{10}$ to less than or equal to 0.0114 gr/dscf, 4.533 lb/hr, and 19.855 ton/yr, in violation of Ingredion's Title V Permits.

68. Unless restrained by an Order of the Court, Ingredion's violations of its Title V Permit, as set forth in this Claim for Relief, are likely to continue.

69. Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 41 above.

70. Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 42 above.

## SECOND CLAIM FOR RELIEF
### Title V Permit Violation: Emissions Control Violations

71. Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

72. The 1997 Construction Permit and each of Ingredion's Title V Permits issued between 2015 and the present requires Ingredion to control PM and VOC emissions from the Indianapolis Facility's Gluten Dryer (Unit 5502-1) by operating a RTO at all times that the Gluten Dryer is in operation. *See* May 2015 Permit, §§ D.1.4(a) and D.1.6(a).

73.   Based on an IDEM inspection on or about July 1, 2015, in which IDEM representatives observed emissions from the Gluten Dryer (Unit 5502-1) bypassing the RTO, during, and for an unknown amount of time prior to, the IDEM inspection, Ingredion failed to control emissions from the Gluten Dryer (Unit 5502-1) with a RTO at the Indianapolis Facility in violation of Ingredion's Title V Permit.

74.   The 1997 Construction Permit and each of Ingredion's Title V Permits issued between 2015 and the present requires Ingredion to operate emissions control scrubbers and control particulate emissions from the Starch Flash Dryer (Unit 575-2). *See* May 2015 Permit, § D.1.6(c).

75.   Based on an EPA inspection on or about July 21, 2015, in which EPA observed material exiting the scrubber controlling emissions from #5 Starch Flash Dryer (575-2), during, and for an unknown amount of time prior to the EPA inspection, Ingredion failed to control particulate emissions from the Starch Flash Dryer (Unit 575-2).

76.   Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to civil penalties not to exceed the amounts set forth in Paragraph 41 above.

77.   Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to civil penalties not to exceed the amounts set forth in Paragraph 42 above.

**THIRD CLAIM FOR RELIEF**
**Title V Permit VOC-related Violations**

78.   Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

79.     Ingredion's Title V Permit requires Ingredion to close all degreasers whenever parts are not being handled in the degreaser, in compliance with the Indiana SIP controlling VOC emissions. 326 IAC 8-3-2(a)(3).

80.     Based on IDEM's June 30 to July 1, 2015, inspection, from an unknown date prior to July 1, 2015, Ingredion failed to close a degreaser cover at the Indianapolis Facility when Ingredion was not using the unit, in violation of Ingredion's Title V Permit. *See* May 2015 Permit, § D.3.5(a)(3).

81.     The 1997 Construction Permit and each of Ingredion's Title V Permits issued between 2015 and the present requires Ingredion to limit the emissions of volatile organic compounds ("VOCs") from the Indianapolis Facility's Feed Dryer (Unit 5502-1A), Germ Dryer (Unit 5502-1B), Gluten Dryer (Unit 5502-1C), and RTO (Unit 5502-1D) to no more than 4.89 lbs/hr.

82.     Based on the results of a performance test performed at the RTO stack (Unit 5502-1D) on May 23-24, 2017, Ingredion failed to limit the VOC emissions from the Feed Dryer (Unit 5502-1A), Germ Dryer (Unit 5502-1B), and Gluten Dryer (Unit 5502-1C) to less than or equal to 4.89 lbs/hr, in violation of Ingredion's Title V Permit. *See*, *e.g.*, May 2017 Permit, § D.1.5(c). Ingredion violated this requirement in this way during, and for an unknown amount of time prior to, that performance test, and until a May 18, 2018 performance test demonstrated compliance.

83.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to civil penalties not to exceed the amounts set forth in Paragraph 41 above.

84.     Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to civil penalties not to exceed the amounts set forth in Paragraph 42 above.

**FOURTH CLAIM FOR RELIEF**
**Title V Permit Violation: Failure to Take Corrective Action when Required**

85.     Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

86.     Since at least 2015, each of Ingredion's Title V Permits has required Ingredion to undertake corrective action or reasonable response steps be taken whenever specified pollution control devices at the Indianapolis Facility are operating outside of parameters established during performance tests, in compliance with 40 C.F.R. § 70.6(a)(3)(i)(B).

87.     Based on quarterly reports that Ingredion submitted to IDEM, Ingredion failed to take corrective action or reasonable response steps as its Title V Permits require as follows:

a.     On at least two days in March 2015, Ingredion failed to take corrective actions or reasonable response steps in response to out-of-range pressure drop events at the baghouse controlling emissions at the West Corn Truck Dump (Unit 56-1), in violation of Ingredion's Title V Permit. *See* January 2015 Permit, § D.2.7(a).

b.     For at least twenty (20) days during March 2015, Ingredion failed to take corrective actions or reasonable response steps in response to out-of-range pressure drop readings at the baghouse controlling emissions at the Hammer Mill (Unit 5502-3), in violation of Ingredion's Title V Permit. *See* January 2015 Permit, § D.2.7(a).

c.     On at least five days during January 2016, Ingredion failed to take corrective action or reasonable response steps in response to an out-of-range pressure drop reading at the baghouse used to control emissions from the Blending Bin (Unit 152-15) in violation of Ingredion's Title V Permit. *See* September 2015 Permit, § D.3.7.

d.      On at least two occasions during August 2016, Ingredion failed to take corrective actions or reasonable response steps in response to an out-of-range water make-up rate at the scrubber controlling the #6 Starch Flash Dryer (Unit 575-3) in violation of Ingredion's Title V Permit. *See* June 2016 Permit, § D.1.10(d).

e.      On at least one day in September 2016, Ingredion failed to take corrective actions or reasonable response steps in response to an out-of-range pressure drop of the baghouse controlling the Hammer Mill (Unit 5502-3) and the Germ Bin (Unit 5503-2) in violation of Ingredion's Title V Permit. *See* June 2016 Permit, § D.2.8.

f.      On at least two days in September 2016, Ingredion failed to take corrective actions or reasonable response steps in response to an out-of-range pH reading of the first effect wash water to the GHE controlling $SO_2$ emissions from the Feed Dryer (Unit 5502-1A), in violation of Ingredion's Title V Permit. *See* June 2016 Permit, § D.1.9(a).

g.      For at least five weeks during the first quarter of 2019, Ingredion failed to take corrective actions or reasonable response steps in response to an out-of-range water make-up rate at the scrubber controlling #1 Spray Dryer (Unit 5549-1), in violation of Ingredion's Title V Permit. *See* May 2017 Permit, § D.1.11(d).

h.      For at least three days during the first quarter of 2020, Ingredion failed to take corrective actions or reasonable response steps in response to an out-of-range pressure drop at the scrubber controlling #1 Starch Flash Dryer (Unit 40-4), in violation of Ingredion's Title V Permit. *See* May 2017 Permit, § D.1.11(c).

88.    Based on EPA's July 21, 2015, inspection, from an unknown date prior to July 21, 2015, and continuing for some time thereafter, Ingredion failed to take corrective actions or reasonable response steps in response to out-of-range water flow at the wet scrubber controlling

emissions from the #5 Starch Flash Dryer (Unit 575-2), in violation of Ingredion's Title V Permit. *See* May 2015 Permit, § D.1.6(c).

89.     Unless restrained by an Order of the Court, Ingredion's violations of its Title V Permit, as set forth in this Claim for Relief, are likely to continue.

90.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 41 above.

91.     Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 42 above.

### FIFTH CLAIM FOR RELIEF
### Title V Permit Violations: Failure to Take or Record Operational Measurements

92.     Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

93.     Since at least 2015, each of Ingredion's Title V Permits has required Ingredion to take readings the instruments used to measure specified operating parameters of certain pollution control devices at least once per day when the associated emission units are in operation, in compliance with 40 C.F.R. § 70.6(a)(3)(i)(B).

94.     Based on quarterly reports submitted to IDEM by Ingredion, Ingredion failed to take readings of the instruments used to measure specified operating parameters of certain pollution control devices as its Title V Permits require as follows:

      a.     On at least one day in March 2015, Ingredion failed to take or record pressure drop readings at the baghouses controlling the emissions from the Hammer Mill (Unit 5502-3) and the Germ Bin (Unit 5503-2), in violation of Ingredion's Title V Permit. *See* January 2015 Permit, §§ D.2.7(a), D.2.7(b), and D.2.10(c).

b.      On at least two days during the second quarter of 2016, Ingredion failed to record the fan amperage and a reason for the lack of a reading at the RTO (Unit 5502-1D), in violation of the Ingredion's Title V Permit. *See* September 2015 Permit, § D.1.14(i).

c.      On at least one day in September 2016, Ingredion failed to record a pressure drop reading and the reason for any lack of a reading across the baghouses controlling the Hammer Mill (Unit 5502-3) and the Germ Bin (Unit 5503-2), in violation of Ingredion's Title V Permit. *See* June 2016 Permit, §§D.2.8 and D.2.11(d).

d.      On at least one day in December 2016, Ingredion failed to record a pressure drop reading and the reason for any lack of a reading across the baghouses controlling the Hammer Mill (Unit 5502-3) and the Germ Bin (Unit 5503-2), in violation of Ingredion's Title V Permit. *See* October 2016 Permit, §§ D.2.8 and D.2.11(d).

e.      On at least one day in March 2020, Ingredion failed to record visible emission notations at the silo and receiver of the Sodium Sulfate Conveying System (Units 40-1A and 40-1B), in violation of Ingredion's Title V Permit. *See* February 2020 Permit, §§ D.2.8 and D.2.11(d).

f.      On at least one day in April 2020 and one day in June 2020, Ingredion failed to take or record measurements or lost the measurements that it took of the fan amperage at the RTO (Unit 5502-1D), in violation of Ingredion's Title V Permit. *See* February 2020 Permit, §§ D.1.14 and D.1.15(i).

g.      On at least one day in April 2020 and one day in June 2020, Ingredion failed to take or record measurements, or lost the measurements that it took for: pressure drop readings and visible emission readings at the Hammer Mill and Germ Bin (Units 5502-3 and 5503-2); and visible emission readings at the Gluten Receiver (Unit 5503-1), Pellet Cooler (Unit

5502-5), Germ Cooler (Unit 5502-6), and RTO Stack (Unit 5502-7), in violation of Ingredion's Title V Permit. *See* February 2020 Permit, §§ D.2.11(b)–(d).

h.     On at least two days during the second quarter of 2020, Ingredion failed to record pressure drop readings and the reason for any lack of a reading across the baghouse controlling the Hammer Mill (Unit 5502-3), in violation of Ingredion's Title V Permit. *See* February 2020 Permit, §§ D.2.8.

i.     On at least one day in August 2020, Ingredion failed to record pressure drop readings and the reason for any lack of a reading across the baghouse controlling the Hammer Mill (Unit 5502-3), in violation of Ingredion's Title V Permit. *See* February 2020 Permit, §§ D.2.8.

j.     On at least one day in November 2020, Ingredion failed to record pressure drop readings and the reason for any lack of a reading across the baghouse controlling PM emissions from the Hammer Mill (Unit 5502-3), in violation of Ingredion's Title V Permit. *See* October 2020 Permit, § D.2.8.

95.     Unless restrained by an Order of the Court, Ingredion's violations of its Title V Permit, as set forth in this Claim for Relief, are likely to continue.

96.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 41 above.

97.     Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 42 above.

## SIXTH CLAIM FOR RELIEF
### Title V Permit Violations: Failure to Calibrate or Replace Instruments

98.     Paragraphs 1 through 64 above are re-alleged as if fully set forth herein.

99.     Since at least 2015, each of Ingredion's Title V Permits has required Ingredion to calibrate or replace instruments used to measure specified operating parameters of certain pollution control devices at least once every six months, in compliance with 40 C.F.R. § 70.6(a)(3)(i)(B).

100.    Based on quarterly reports that Ingredion submitted to IDEM, Ingredion failed to comply with the requirement of its Title V Permit to calibrate or replace instruments that Ingredion used to measure specified operating parameters of certain pollution control devices as follows:

a.      During the second quarter of 2016, Ingredion failed to timely calibrate or replace the instruments that Ingredion used to determine pressure drop on the scrubbers controlling the #3 Starch Flash Dryer (Unit 40-2), the #2 Starch Flash Dryer (Unit 40-3), the #1 Starch Flash Dryer (Unit 40-4), the #4 Starch Flash Dryer (Unit 575-1), the #5 Starch Flash Dryer (Unit 575-2), the #6 Starch Flash Dryer (Unit 575-3), the #1 Spray Dryer (Unit 5549-1), and the #2 Spray Dryer (Unit 5549-2), in violation of Ingredion's Title V Permit. *See* September 2015 Permit, § D.1.10(e).

b.      During the second quarter of 2016, Ingredion failed to timely calibrate or replace the instruments that Ingredion used for determining pressure drop of the bag houses controlling the DSE Bag Slitter (Unit 42-10), the Corn Truck Dump (Unit 56-1), the DSW Packing Fugitive Dust Collector (Unit 71-7), the Hammer Mill (Unit 5502-3), the Germ Bin (Unit 5503-2), the Agglomerator (Unit 5549-13), #2 Fugitive Dust Collector (Unit 5549-20), and

20

the Line 1 Fugitive Dust Collector (Unit 5549-21), in violation of Ingredion's Title V Permit. *See* September 2015 Permit, § D.2.8.

   c. During the second quarter of 2016, Ingredion failed to timely calibrate or replace the instruments that Ingredion used for determining pressure drop of the bag houses controlling the Starch Cooling and Conveying System (Unit TF41818), the Blending Bin (Unit 152-15), the Starch Storage Silo #2 Receiver (Unit TF41820), and the FBR1 Cooling System (Unit TR31913), in violation of Ingredion's Title V Permit. *See* September 2015 Permit, § D.3.7.

   d. During the first quarter of 2017, Ingredion failed to timely calibrate or replace the instrument that Ingredion used for determining pressure drop on the scrubber controlling the #3 Starch Flash Dryer (Unit 40-2) for at least two weeks, in violation of Ingredion's Title V Permit. *See* October 2016 Permit, § D.1.11(e).

   e. During the third quarter of 2017, Ingredion failed to timely calibrate or replace the instruments that Ingredion used for determining pressure drop on the scrubber controlling the #1 Starch Flash Dryer (Unit 40-4), the #4 Starch Flash Dryer (Unit 575-1), the #1 Spray Dryer (Unit 5549-1), the #2 Spray Dryer (Unit 5549-2), and the Spray Agglomerator #3 (Unit 5549-28) for at least six weeks, in violation of Ingredion's Title V Permit. *See* May 2017 Permit, § D.1.11(e).

   f. During the third quarter of 2017, Ingredion failed to timely calibrate or replace the instruments that Ingredion used for determining pressure drop on the baghouse used to control the Starch Cooling and Conveying System (Unit TF41818) for at least three weeks, in violation of Ingredion's Title V Permit. *See* May 2017 Permit, § D.3.7.

   g. During the first quarter of 2020, Ingredion failed to timely calibrate or replace the instrument that Ingredion used for determining pressure drop on the scrubber

controlling the #2 Starch Flash Dryer (Unit 40-3) for at least 26 days, in violation of Ingredion's Title V Permit. *See* May 2017 Permit, § D.1.11(e).

101.    Unless restrained by an Order of the Court, Ingredion's violations of its Title V Permit, as set forth in this Claim for Relief, are likely to continue.

102.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 41 above.

103.    Under Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, the violations set forth above subject Ingredion to injunctive relief and civil penalties not to exceed the amounts set forth in Paragraph 42 above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Permanently enjoin Defendant from further violations of the CAA and applicable requirements established thereunder;

b.    Require Defendant to obtain and comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the CAA and applicable requirements established thereunder, including its current Title V Permit described above;

c.    Order Defendant to take other appropriate action to remedy, mitigate, and offset the harm to the public health and the environment which its violations of the CAA alleged above caused;

      d.     Assess a civil penalty against Defendant for violations of applicable provisions of the CAA as well as their implementing regulations and permits issued thereunder of up to the amounts set forth in Paragraph 41 and Paragraph 42 above;

      e.     Award Plaintiffs their costs and disbursements for this action; and

      f.     Grant Plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/Pedro Segura
PEDRO SEGURA
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Washington, D.C. 20044-7611
(202) 532-3153
pedro.segura@usdoj.gov

ZACHARY A. MEYERS
United States Attorney
Southern District of Indiana

J. TAYLOR KIRKLIN
Assistant United States Attorney
United States Attorney's Office
10 W Market St, Suite 2100, Indianapolis, IN 46204

taylor.kirklin@usdoj.gov

OF COUNSEL:
CATHLEEN R. MARTWICK
Associate Regional Counsel
United States Environmental
Protection Agency
Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL  60604-3590
(312) 886-7166

FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL

/s/ Blake Erickson
BLAKE T. ERICKSON
AARON M. RIDLEN
Deputy Attorneys General
Office of the Indiana Attorney General
302 W. Washington Street, IGCS 5th Floor
Indianapolis, IN 46204

OF COUNSEL:
VALERIE TACHTIRIS
Deputy Chief Counsel
United States Environmental
Indiana Department of
Environmental Management
VTachtir@idem.IN.gov

## **CERTIFICATE OF SERVICE**

I certify that on this date I caused copies of the foregoing to be served on the following individuals by electronic mail:

For Ingredion Incorporated:

Rick Duda
Vice President, Associate General Counsel
Ingredion Incorporated
5 Westbrook Corporate Center
Westchester, IL 60154
rick.duda@ingredion.com

Justin Curtis
HeplerBroom
2929 Carlson Drive, Suite 304
Hammond, IN 46323
Justin.Curtis@heplerbroom.com

For the State of Indiana:

Attorney General's Office
Blake T. Erickson
Blake.Erickson@atg.in.gov

Dated: 11/21/2023                                     /s/Pedro Segura_____
                                                     Pedro Segura, Trial Attorney
                                                     United States Department of Justice
                                                     Environmental Enforcement Section
                                                     Environment & Natural Resources Division
                                                     P.O. Box 7611
                                                     Ben Franklin Station
                                                     Washington, D.C. 20044
                                                     (202) 532-3153
                                                     Pedro.Segura@usdoj.gov