IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and the STATE OF INDIANA,<br><br>Plaintiffs,<br><br>v.<br><br>INGREDION INCORPORATED,<br><br>Defendant. | Civil Action No.  1:23-cv-2111-RLY-KMB |

**CONSENT DECREE**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 2
II. JURISDICTION AND VENUE ....................................................................................... 3
III. APPLICABILITY ............................................................................................................ 4
IV. DEFINITIONS.................................................................................................................. 5
V. CIVIL PENALTY ............................................................................................................ 7
VI. COMPLIANCE REQUIREMENTS ................................................................................ 9
VII. MITIGATION ................................................................................................................ 18
VIII. STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT....................................... 21
IX. DELIVERABLES ........................................................................................................... 23
X. REPORTING REQUIREMENTS .................................................................................. 24
XI. STIPULATED PENALTIES .......................................................................................... 27
XII. FORCE MAJEURE ........................................................................................................ 31
XIII. DISPUTE RESOLUTION ............................................................................................. 34
XIV. INFORMATION COLLECTION AND RETENTION................................................... 36
XV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................................... 38
XVI. COSTS ........................................................................................................................... 40
XVII. NOTICES....................................................................................................................... 40
XVIII. EFFECTIVE DATE........................................................................................................ 41
XIX. RETENTION OF JURISDICTION ............................................................................... 41
XX. MODIFICATION ........................................................................................................... 42
XXI. TERMINATION ............................................................................................................ 42
XXII. PUBLIC PARTICIPATION .......................................................................................... 43
XXIII. SIGNATORIES/SERVICE ............................................................................................ 43
XXIV. INTEGRATION ............................................................................................................. 44
XXV. FINAL JUDGMENT ..................................................................................................... 44
XXVI. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION........................................... 44
APPENDICES .................................................................................................................. 44

# I.    INTRODUCTION

A.    The United States of America, by and through its attorneys, by authority of the Attorney General of the United States and acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana ("State"), by authority of the Attorney General of Indiana, acting at the request of the Indiana Department of Environmental Management ("IDEM"), (collectively, "Plaintiffs"), have filed a Complaint in this action pursuant to Section 113 of the CAA, 42 U.S.C. § 7413, Title 13 of the Indiana Code, and Title 326 of the Indiana Administrative Code ("IAC"), concurrently with this Consent Decree. The Complaint alleges that Defendant, Ingredion Incorporated, violated various requirements in its federally-enforceable IDEM operating permits issued to Ingredion for its corn wet milling plant located in Indianapolis, Indiana pursuant to Title V of the Clean Air Act ("CAA") ("Title V Permits"), 42 U.S.C. § 7661 et seq., and federal and state implementing regulations.

B.    The Complaint alleges that Defendant violated three types of federally-enforceable provisions of the Title V Permits: (1) past and continuing exceedances of particulate matter ("$PM_{10}$") emission limits; (2) past exceedances of volatile organic compounds ("VOCs") emission limits; and (3) various operational requirements established by the federally-enforceable Indiana State Implementation Plan ("SIP") that were identified during inspections or reported in Ingredion's quarterly reports.

C.    Prior to the lodging and entry of this Consent Decree, Defendant began implementation of the measures outlined in Section VI (Compliance Requirements) of this Consent Decree, including beginning implementation of a Compliance Management System and installing the Mist Eliminator. Pursuant to discussions with the United States, Defendant also

installed another piece of control equipment (a Wet Scrubber). Operational and monitoring

requirements for the Mist Eliminator and Wet Scrubber were incorporated into Defendant's

applicable Title V Permit for the Facility. However, based on the Parties' understanding of how

to most effectively reduce $PM_{10}$ emissions, this final Consent Decree contains provisions

applicable only to the Mist Eliminator.

      D.      Defendant does not admit any liability to the United States or the State arising out

of the transactions or occurrences alleged in the Complaint.

      E.      The Parties recognize, and the Court by entering this Consent Decree finds, that

this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation

among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

      NOW, THEREFORE, before the taking of any testimony, without the adjudication or

admission of any issue of fact or law except as provided in Section III and, and with the consent

of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

      1.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and

1355. Venue is proper in this district pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a) because the Defendant resides and is found

in this district and because the alleged violations occurred within this district. This Court has

supplemental jurisdiction over the State law claims asserted by Indiana pursuant to 28 U.S.C.

§ 1367(a), because the State claims are related to the federal claims and form part of the same

case or controversy. For purposes of this Decree, or any action to enforce this Decree, Defendant

consents to the Court's jurisdiction over this Decree and any such action and over Defendant.
Defendant also consents to venue in this judicial district.

2.       For purposes of this Consent Decree, Defendant agrees that the Complaint states
claims upon which relief may be granted pursuant to Section 113(b) of the CAA, 42 U.S.C.
§ 7413(b), Title 13 of the Indiana Code, §§ 13-13-5-1, 13-13-5-2 and 13-30-4-1.

### III.  APPLICABILITY

3.       The obligations of this Consent Decree apply to and are binding upon the United
States and the State, and upon Defendant and any successors, assigns, or other entities or persons
otherwise bound by law.

4.       No transfer of ownership or operation of the Facility, whether in compliance with
the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure
that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant
shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously
provide written notice of the prospective transfer, together with a copy of the written agreement,
to Indiana, EPA Region 5, the United States Department of Justice, and the United States
Attorney for the Southern District of Indiana, in accordance with Section XVII (Notices). Any
attempt to transfer ownership or operation of the Facility without complying with this Paragraph
constitutes a violation of this Decree.

5.       Defendant shall provide a copy of this Consent Decree to all officers, employees,
and agents whose duties might reasonably include compliance with any provision of this Decree,
as well as to any contractor retained to perform work required under this Consent Decree.
Defendant shall condition any such contract upon performance of the work in conformity with
the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.      "5502-1 Dryer Series" means the following Emissions Units at the Facility, collectively, which exhaust into stack 5502-7:

i.   Unit 5502-1A, a natural gas-fired Feed Dryer;
ii.  Unit 5502-1B, a natural gas-fired Germ Dryer;
iii. Unit 5502-1C, a natural gas-fired Gluten Dryer; and
iv.  Unit 5502-1D, a Regenerative Thermal Oxidizer ("RTO").

b.      "Complaint" means the complaint filed by the United States and the State of Indiana in this action;

c.      "Consent Decree" or "Decree" means this Decree and all appendices attached hereto;

d.      "Date of Lodging" means the date that this Consent Decree is first filed with the Court pursuant to Section XXII (Public Participation);

e.      "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

f.      "Defendant" means Ingredion Incorporated;

5

g.      "DOJ" means the United States Department of Justice and any of its successor departments or agencies;

h.      "Mist Eliminator" means a device designed to remove liquid droplets and wetted solid particles from air and gas streams that Defendant installed at the Facility under Section VI of this Consent Decree to control particulate matter emissions from the 5502-1 Dryer Series.

i.      "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

j.      "Effective Date" means the definition provided in Section XVIII (Effective Date);

k.      "Facility" means Defendant's corn wet milling plant located in Indianapolis, Indiana;

l.      "Interest" means interest calculated at the rate set forth in 28 U.S.C. § 1961 as of the date that payment was due unless otherwise provided herein;

m.      "Paragraph" means a portion of this Decree identified by an Arabic numeral;

n.      "Parties" means the United States, the State of Indiana, and Defendant;

o.      "PM" or "Particulate Matter" means any airborne finely divided solid or liquid material, excluding uncombined water, with an aerodynamic diameter smaller than one hundred (100) micrometers ($\mu$m).

p.      "$PM_{10}$" means any PM with an aerodynamic diameter less than or equal to a nominal ten micrometers ("$\mu$m") as measured by an applicable reference method specified in 40 C.F.R. Part 50 or by an equivalent or alternative method approved by EPA.

q.      "Regenerative Thermal Oxidizer" or "RTO" means Unit 5502-1D at the Facility, which is designed and installed downstream of the other units in the 5502-1 Dryer Series to control volatile organic compounds, hazardous air pollutants, and particulate matter.

r.      "Root Cause Analysis" means an assessment conducted through a process of investigation to determine the primary cause, and any other contributing cause(s), of any Title V Permit monitoring or recordkeeping deficiencies that occurred during a given reporting period.

s.      "Section" means a portion of this Decree identified by a Roman numeral;

t.      "State" means the State of Indiana;

u.      "Title V Permit" means the operating permit applicable to Defendant and issued by IDEM for the Facility pursuant to Title V of the CAA, 42 U.S.C. §§ 7661-7661e, and 326 IAC 2-1, including revisions and modifications to the permit, or any newly issued permit that replaces or modifies the Title V Permit in effect as of the Date of Lodging; and

v.      "United States" means the United States of America, acting on behalf of EPA.

## V.  CIVIL PENALTY

8.      Within 30 Days after the Effective Date, Defendant shall pay the United States and the State a sum of $1,139,600 as a civil penalty, together with Interest distributed as follows:

a.      Defendant shall pay a civil penalty of $850,000 to the United States together with Interest accruing from the Date of Lodging.

b.      Defendant shall pay a civil penalty of $289,600 to the State together with Interest accruing from the Date of Lodging.

9.      Defendant shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided

to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Indiana after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Jose Godina
> Senior Manager, Global Cash Management
> Ingredion Incorporated
> 5 Westbrook Corporate Center
> Westchester, IL, 60154
> jose.godina@ingredion.com
> (708) 551 2638

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XVII (Notices).

10.     At the time of payment to the United States, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XVII (Notices); and (iii) to EPA in accordance with Section XVII (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Ingredion Inc.* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-12360.

11.     Defendant shall pay the civil penalty due to the State by certified check or checks or cashier's checks made payable to "Environmental Management Special Fund" referencing the name and address of the party making payment, and the civil action number. Defendant shall

contact IDEM's counsel to arrange the wire transfer or send the check(s) to: Indiana Department of Environmental Management Cashier - MC 50-10C 100 North Senate Avenue Indianapolis, IN 46204-2251.

12.     At the time of payment to the State, Defendant shall send notice that payment has been made to the State in accordance with Section XVII (Notices) within ten (10) Days after the transfer occurs to confirm receipt.

13.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section XI (Stipulated Penalties) in calculating its federal or State income tax.

## VI.   COMPLIANCE REQUIREMENTS

14.     Defendant shall comply with all operational requirements and monitoring, recordkeeping, and maintenance obligations contained in its Title V Permit. Defendant shall comply with all PM and $PM_{10}$ emission limits contained in its Title V Permit related to the 5502-1 Dryer Series.

### A.     INSTALLATION AND DEMONSTRATION OF MIST ELIMINATOR

15.     Mist Eliminator Installation. Defendant has installed a Mist Eliminator at the Facility to aid in the control of combined emissions of $PM_{10}$ from the 5502-1 Dryer Series. Defendant installed the Mist Eliminator immediately upstream of the existing RTO. Beginning on July 31, 2022, Defendant shall operate the Mist Eliminator at all times when the 5502-1 Dryer Series is in operation.

16.     Compliance Demonstration Protocol. Defendant has submitted to EPA for review and approval consistent with the requirements of Section IX (Deliverables) a Compliance Demonstration Protocol for the Mist Eliminator and RTO. EPA has approved the Compliance Demonstration Protocol. The Compliance Demonstration Protocol described the methodology by which the Mist Eliminator and RTO will be tested to determine the $PM_{10}$ emission rate from the

9

RTO. The Compliance Demonstration Protocol required the compliance demonstration to be carried out under process operating conditions producing the highest possible $PM_{10}$ emissions to the Mist Eliminator, as well as meet the requirements of relevant EPA test methods.

17.    <u>Commencement and Completion of Compliance Demonstration</u>. Defendant has demonstrated the effectiveness of its Mist Eliminator to control combined $PM_{10}$ emissions from the 5502-1 Dryer Series and demonstrated compliance with applicable Title V Permit PM and $PM_{10}$ emission limits by conducting the testing in accordance with the EPA-approved Compliance Demonstration Protocol.

18.    <u>Compliance Demonstration Report</u>.

a.    Defendant has submitted to EPA for review and approval consistent with the requirements of Section IX (Deliverables) a Compliance Demonstration Report. EPA has approved the Compliance Demonstration Report. The Compliance Demonstration Report described the conditions under which the compliance demonstration was carried out, all results of performance testing, and all steps taken to comply with the Compliance Demonstration Protocol.

b.    In the Compliance Demonstration Report, Defendant submitted to EPA for review and approval pursuant to Section IX (Deliverables) a "Mist Eliminator Pressure Drop Parameter." The Mist Eliminator Pressure Drop Parameter represents the exhaust air stream pressure drop (inches of water) to be monitored and recorded daily. The Mist Eliminator Pressure Drop Parameter was proposed at a range so that operation of the Mist Eliminator in compliance with the Mist Eliminator Pressure Drop Parameter will demonstrate continuous compliance with a PM and $PM_{10}$ limit of: (1) 12.09 tons per year ("tpy") calculated on a 12-month rolling basis; (2) 2.76 pounds per hour ("lb/hr"); and (3) 0.0080 grains per dry standard

cubic foot ("gr/dscf") (the "New PM and $PM_{10}$ Limits"). EPA has approved the Mist Eliminator Pressure Drop Parameter.

### B.   OPERATION OF MIST ELIMINATOR

19.    Defendant shall operate the Mist Eliminator at all times the 5502-1 Dryer Series is operating in a manner to comply with the Mist Eliminator Pressure Drop Parameter approved by EPA. A value that is outside of the Mist Eliminator Pressure Drop Parameter is not a violation of this Paragraph if Defendant takes response steps as required by and described in the applicable Title V Permit.

20.    Good Air Pollution Control Practices. At all times including during startup, shutdown, or the malfunction of one or more of the dryers in the 5502-1 Dryer Series, Defendant shall operate the 5502-1 Dryer Series, Mist Eliminator, and the RTO in a manner consistent with safety and good air pollution control practices to minimize $PM_{10}$ emissions to the greatest extent possible. This practice during a period of startup, shutdown, or malfunction does not require Defendant to achieve emission levels that would be required at other times if this is not consistent with safety and good air pollution control practices, nor does it require the Defendant to make any further efforts to reduce emissions if levels required have been achieved. At the time of its submission of the Compliance Demonstration Report, Defendant submitted to EPA a copy of its written startup, shutdown, and malfunction plan.

21.    Routine Preventative Maintenance. Defendant shall conduct routine preventative maintenance on the RTO and Mist Eliminator in a manner consistent with safety and good air pollution control practices to maintain $PM_{10}$ emissions compliance, to minimize periods of upset or malfunction, and to ensure their continued proper performance or, as needed, replacement.

C.      **PERMITTING AND EMISSIONS CREDIT PROVISIONS**

22.     <u>Permits Including Mist Eliminator Pressure Drop Parameter</u>. By no later than 60 Days after EPA approved the Compliance Demonstration Report, and the Mist Eliminator Pressure Drop Parameter under Paragraph 18, Defendant shall submit to IDEM a request for a source modification under 326 IAC 2-7-10.5 and accompanying permit modifications to the applicable Title V permit for the facility for the continuous operation of the Mist Eliminator adhering to the Mist Eliminator Pressure Drop Parameter and New PM and $PM_{10}$ Limits approved by EPA under Paragraph 18. The request shall include a copy of the Compliance Demonstration Report as an attachment or appendix. The requested source modification approval will survive termination of this Consent Decree and will require adherence to the Mist Eliminator Pressure Drop Parameter and New PM and $PM_{10}$ Limits enumerated in the EPA-approved Compliance Demonstration Report. The Mist Eliminator Pressure Drop Parameter may be adjusted in subsequent permitting as confirmed by testing.

23.     <u>Prohibition on Use of $PM_{10}$ Emission Reductions</u>. Defendant shall neither generate nor use any $PM_{10}$ emission reductions resulting from the installation and operation of the Mist Eliminator required by this Consent Decree as creditable, contemporaneous emissions decreases or emission offset credits in any Prevention of Significant Deterioration ("PSD"), major New Source Review ("NSR"), and/or minor NSR permit or permit proceeding, or under the Indiana New Source Review program 326 IAC 2-3, or in any emission reduction trading market system. In addition, the emissions reductions of $PM_{10}$ that result from implementing the terms of this Consent Decree may not be sold or traded by Defendant. However, nothing in this Paragraph shall be construed to limit Defendant's generation and use of $PM_{10}$ emission reductions that are achieved from sources not under the Consent Decree, or reductions of any other pollutant at any source. Furthermore, nothing in this Consent Decree is intended to

12

preclude the emission reductions generated under this Consent Decree from being considered by EPA or the State as creditable contemporaneous decreases for the purpose of mitigation under this Consent Decree, attainment demonstrations submitted pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, or in determining impacts on NAAQS, PSD increment, or air quality related values.

24.     <u>Timely and Complete Applications and Delays in Permits or Approvals</u>. Where any compliance obligation under this Section requires Defendant to obtain any other federal, state, or local permit or approval, or modification to any existing federal, state or local permit or approval, Defendant shall submit timely and complete applications and take all other actions reasonably necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

### D.     **COMPLIANCE MANAGEMENT SYSTEM**

25.     Defendant shall utilize an environmental, health and safety software solution to implement a Compliance Management System ("CMS"). The CMS will be designed to improve the Facility's Title V Permit compliance monitoring and recordkeeping processes as set forth in Paragraph 27. Defendant shall provide EPA notice that it has fully implemented the Compliance Management System by August 31, 2023.

26.     <u>CMS Consultant</u>. Defendant has selected and retained and EPA, after consultation with IDEM, has approved Arcadis as a third-party CMS Consultant to assist with the ongoing implementation of its CMS. Defendant shall bear all costs associated with the CMS Consultant,

cooperate fully with the CMS Consultant, and provide the CMS Consultant with access to all records, employees, contractors, and the Facility that the CMS Consultant deems reasonably necessary to effectively perform the CMS Consultant's duties.

27.    <u>Duties of CMS Consultant</u>. Defendant's CMS Consultant shall: (1) develop and implement software necessary to comply with the monitoring and recordkeeping requirements under the Title V Permit; (2) centralize recordkeeping for monitoring requirements; and (3) implement a mobile application interface to replace paper processes currently utilized by Defendant at the Facility.

28.    <u>CMS Audit</u>. Defendant shall engage a separate CMS Auditor, in compliance with Paragraph 31, to audit the effectiveness of the implementation of the CMS as it relates to compliance with the Title V Permit's monitoring and recordkeeping requirements and the adequacy of internal processes.

29.    Defendant shall ensure that the CMS Auditor performs the following duties:

a.    Within 180 Days of EPA's approval of the CMS Auditor under Paragraph 31, the CMS Auditor shall perform a CMS Audit.

b.    The CMS Audit shall evaluate the adequacy of CMS implementation at the Facility against the Title V Permit's monitoring and recordkeeping requirements and identify areas of concern, from top Facility management down, throughout each major organizational unit with responsibilities under the CMS. The CMS Audit shall determine the following:

      i.    Whether there is a defined system, subsystem, program, or planned task for the respective Title V Permit monitoring and recordkeeping requirement;

     ii.    To what extent the system, subsystem, program, or task has been implemented, and is being maintained;

   iii.    The adequacy of the Facility's internal self-assessment procedures for programs and tasks composing the CMS;

   iv.    Whether Defendant is effectively communicating the Title V

> Permit's monitoring and recordkeeping requirements to affected parts of the organization, or those working on behalf of the organization;
>
> v. Whether further improvements should be made to the CMS; and
>
> vi. Whether any nonconformance occurred from Defendant's written requirements or procedures.

c. The CMS Auditor shall develop a CMS Audit Report. Within 45 Days following the completion of the CMS Audit, the Defendant shall submit the CMS Audit Report to EPA and IDEM. The CMS Audit Report shall contain: (i) a summary of the audit process, including any obstacles encountered; (ii) detailed CMS Audit Findings, including the basis for each finding and each area of concern identified; (iii) identification of any CMS Audit Findings corrected or areas of concern addressed during the audit; (iv) recommendations for revising the CMS and for resolving any area of concern or otherwise achieving full implementation of the CMS; and (v) a certification by the Defendant that the CMS Audit was conducted in accordance with the provisions of this Decree.

30. <u>Follow-Up Corrective Measures</u>. Within 60 Days of receiving the CMS Audit Report, Defendant shall submit to EPA and IDEM for review and approval pursuant to Section IX (Deliverables) a report responding to the CMS Audit Findings and areas of concern identified in the CMS Audit Report and providing an action plan for expeditiously coming into full conformance with the provisions in the CMS (the "Audit Response and Action Plan"). If Defendant disagrees with any CMS Audit Finding or recommendation, Defendant shall explain that disagreement in the Audit Response and Action Plan. The Audit Response and Action Plan shall include the result of any Root Cause Analysis, specific deliverables, responsibility assignments, and an implementation schedule for the identified actions and measures, including those that may have already been completed. Defendant may implement any Audit Response and

Action Plan items prior to receiving EPA approval, but shall address any EPA conditions for approval pursuant to Paragraph 47.b unless the issue is submitted to Dispute Resolution pursuant to Paragraph 48.

      a.      If EPA approves the Audit Response and Action Plan with no conditions for approval, Defendant shall implement the Audit Response and Action Plan in accordance with the schedule set forth in the Audit Response and Action Plan.

      b.      If EPA provides any conditions for approval pursuant to Paragraph 47.b, Defendant shall, within 30 Days of receipt of EPA's conditions for approval, submit to EPA a final Audit Response and Action Plan responding to and addressing EPA's conditions for approval.

      31.      <u>Selection of Auditor and any replacement Consultant</u>. The following provisions shall govern selection of the CMS Auditor and replacement of the originally selected CMS Auditor or CMS Consultant if either cannot fulfill the obligations in this Consent Decree.

      a.      <u>Qualifications for CMS Auditor and Replacement Consultant</u>. The CMS Auditor and Consultant shall each be an independent third party that does not have any direct financial stake in the outcome of the CMS Audit conducted pursuant to this Consent Decree. The CMS Auditor and Consultant shall each: (a) satisfy the auditor qualification requirements of Table 1 in ISO 19011 (First edition, 2002-10-01); (b) have a working process knowledge of the Facility or similar operations; and (c) have expertise and competence in the applicable regulatory programs under federal and state environmental laws;

      b.      Within 10 Days of the Effective Date, or within 10 Days of determining that either the selected CMS Auditor or Consultant or both cannot fulfill their obligations under this Consent Decree, Defendant shall submit to EPA and IDEM for approval pursuant to Section

IX (Deliverables) a list of two or more proposed CMS Auditors or two or more proposed Consultants, as applicable, ("candidates"), along with (i) the name, affiliation, and address of each candidate; (ii) information demonstrating that each candidate has the qualifications for the applicable position listed in Paragraph 31.a above, and (iii) descriptions of any previous work contracts, or financial relationships they have had with Defendants.

        c.      EPA, in consultation with IDEM, shall notify Defendant of whether it approves any of the candidates. If EPA, after consultation with IDEM, does not approve any of the candidates on Defendant's list, then Defendant shall submit a second list of candidates to EPA and IDEM within 30 Days of receipt of EPA's written notice. If EPA does not approve any of the candidates on the second list, then Defendant shall submit a third list of candidates within 30 Days of receipt of written notice that EPA has not approved of any of the candidates on Defendant's second list. If EPA does not approve any of the candidates on the third list and the Parties are unable to agree on a CMS Auditor or Consultant, the Parties shall invoke the Dispute Resolution process in Section XIII (Dispute Resolution).

        d.      Within 10 Days after receipt of EPA's approval of one or more candidates to serve as CMS Auditor or Consultant, Defendant shall select one candidate from those approved by EPA and shall enter into a contract with the CMS Auditor or Consultant, as applicable, for performance of the duties described in this Decree. In the event the selected CMS Auditor or Consultant is no longer available or willing to accept the work described above when notified of their selection by Defendant, then Defendant shall, within 30 Days of receiving notice that the selected CMS Auditor or Consultant is no longer available or willing to accept the work, select another candidate approved by EPA and enter into the contract for the performance of the duties described in Paragraph 27. If there is no other EPA-approved CMS Auditor or Consultant,

Defendant shall submit another list of candidates to EPA within 30 Days of learning the approved candidate is unavailable and the process described in this Paragraph 31.a–d shall re-commence.

## VII.  MITIGATION

32.     <u>Mitigation Program</u>. Defendant shall implement the following projects (the "Mitigation Projects") at the Facility: (a) the Paving Mitigation Project; and (b) the Locomotive Project.

33.     <u>Paving Mitigation Project</u>. The goal of the Paving Mitigation Project is to reduce fugitive PM generated by onsite traffic on unpaved or partially paved roads and parking areas, which the Parties estimate will reduce an estimated 10.45 tons per year of airborne PM. By September 15, 2023, Defendant shall complete paving on the following unpaved roadways and parking/yard/staging areas depicted in Appendix A: Employer and Contractor Parking (Drover), Contractor Yard, Gate 6 Entrance, Contractor Pass Through, and Starch Truck Staging. This paving shall be conducted with asphalt or concrete material. Within 60 Days of completing the Paving Mitigation Project, Defendant shall submit for EPA review and approval pursuant to Section IX (Deliverables), a Paving Mitigation Project Completion Report that documents the date that the Paving Mitigation Project was completed. In completing the Paving Mitigation Project, Defendant shall comply with all applicable state and local laws, ordinances, regulations, and permitting requirements.

34.     <u>Locomotive Project</u>.

a.     The Locomotive Project shall consist of replacing old locomotives in use at the Facility with lower-emission locomotives. By December 31, 2023, Defendant shall enter into a five-year lease for one or more locomotives each utilizing the following compression-

ignition engine model: LCEXL15.0AAL Engine Family, 600 hp (447 kW) Model or other locomotives subject to the Tier 4 emission standards under 40 C.F.R. Part 1033 ("the New Locomotives"). Upon delivery and implementation of the New Locomotives, Defendants shall permanently cease its operation of the existing EMD GP9 diesel-electric locomotives numbered RSSX 1414 and RSSX 1416 (the "Existing Locomotives") at the Facility and cause the engines of the Existing Locomotives to be rendered permanently inoperable.

       b.      Within 60 days of completing the Locomotive Project, Defendant shall submit to EPA for review and approval under Section IX (Deliverables) a Locomotive Project Completion Report that documents the date that the Locomotive Project was completed. In completing the Locomotive Project, Defendant shall comply with all applicable state and local laws, ordinances, regulations, and permitting requirements.

35.     <u>Progress and Completion Reports</u>. Defendant shall provide progress reports for each Mitigation Project to EPA and IDEM within the quarterly reports required by Paragraph 53. For each Mitigation Project, Defendant shall continue to implement the Mitigation Project and submit quarterly progress reports on that Mitigation until Defendant submits to EPA, and EPA approves, evidence that such Mitigation Project has been completed.

36.     Defendant shall maintain, and present to EPA and IDEM upon request, all documents reasonably necessary to substantiate the completion of the Mitigation Projects and shall provide these documents to EPA and IDEM within 30 Days following a request for the documents.

37.     All reports prepared by Defendant pursuant to the requirements of this Section VII (Mitigation) of the Consent Decree and required to be submitted to EPA and IDEM shall be publicly available from Defendant without charge in paper or electronic format.

38.     <u>Permits</u>. Where any compliance obligation under this Section VII (Mitigation) requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

39.     <u>Mitigation Project Certifications</u>. Defendant shall certify, as part of each report submitted to EPA and IDEM for the Mitigation Projects, the truth and accuracy of each of the following:

a.     That, as of the date of executing this Consent Decree, Defendant is not required to perform or develop any Mitigation Project(s) by any federal, state, or local law or regulation and is not required to perform or develop any Mitigation Project(s) by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b.     That the Mitigation Project(s) is or are not Mitigation Project(s) that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree;

c.     That Defendant has not received and will not receive credit for the Mitigation Project(s) in any other enforcement action; and

d.     That Defendant shall neither generate nor use any pollutant reductions from the Paving Mitigation Project, or Locomotive Project as netting reductions, pollutant offsets, or to apply for, obtain, trade, or sell any pollutant reduction credits.

## VIII.   STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT

40.      In lieu of payment of a portion of the civil penalty, Defendant shall implement a Supplemental Environmental Project ("SEP"). The SEP shall consist of a donation to the Indiana Finance Authority ("IFA") in the amount of $560,400.00 to support Brownfields redevelopment in and around Marion County, Indiana.

41.      Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree. Defendant shall make a payment to the IFA in the amount specified in Paragraph 40 within thirty (30) days of Effective Date of the Consent Decree. The payment will fund activities related to brownfield development at a brownfield site or sites in and around Marion County, Indiana. The IFA will account for the SEP payment and will oversee the work undertaken at the Brownfield Site(s) funded by the SEP proceeds. "Satisfactory completion" means Defendant has submitted to IDEM documentation of payment to the Indiana Finance Authority. In the event the Defendant does not make its SEP payment within thirty (30) Days of the Effective Date of the Consent Decree, the full amount of the civil penalty as stated in Paragraph 8.b will be due plus a civil penalty of $560,400, in addition to interest in accordance with the terms of this Consent Decree.

42.      With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.      that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b.      that the SEP is not a project that Defendant was planning or intending to

construct, perform, or implement other than in settlement of the claims resolved in this Decree;

        c.    that Defendant has not received and will not receive credit for the SEP in any other enforcement action;

        d.    that Defendant will not receive any reimbursement for any portion of the SEP from any other person; and

        e.    that Defendant is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEP described in Paragraph 41. For purposes of this certification, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

43.    <u>SEP Completion Report</u>. "Within 30 Days after the date set for completion of the SEP," Defendant shall submit a SEP Completion Report to DOJ, EPA and IDEM, in accordance with Section XVII (Notices). The SEP Completion Report shall contain the following information: certification that the SEP has been fully implemented pursuant to the provisions of this Decree.

44.    Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 55.

45.    Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *United States and State of Indiana v. Ingredion, Inc.*, taken on behalf of the Indiana Department of Environmental Management under the Clean Air Act."

46.     For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## IX.   DELIVERABLES

47.     <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree for EPA approval, EPA, after consultation with IDEM, will in writing:

      a.     Approve the submission;

      b.     Approve the submission upon specified conditions;

      c.     Approve part of the submission and disapprove the remainder; or

      d.     Disapprove the submission.

48.     If the submission is approved pursuant to Paragraph 47.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved or as otherwise provided by this Consent Decree. If the submission is conditionally approved or approved only in part pursuant to Paragraph 47.b or 47.c, Defendant shall, upon written direction from EPA, after consultation with IDEM, take all actions required by the approved plan, report, or other item that EPA, after consultation with IDEM, determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XIII (Dispute Resolution).

49.     If the submission is disapproved in whole or in part pursuant to Paragraph 47.c or 47.d, Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is

approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

50.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with IDEM, may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies subject to Defendant's right to invoke Dispute Resolution and the right of EPA and IDEM to seek stipulated penalties as provided in the preceding Paragraphs.

51.     If Defendant elects to invoke Dispute Resolution as set forth in Section XIII (Dispute Resolution), Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 83 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

52.     Any stipulated penalties applicable to the original submission, as provided in Section XI (Stipulated Penalties), accrue during the 45 Day period referenced in Paragraph 49 or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## X.   REPORTING REQUIREMENTS

53.     Defendant shall submit the following quarterly reports to EPA, DOJ, and IDEM at the addresses set forth in Section XVII (Notices):

a.      Within 30 Days after the end of each calendar-year quarter (i.e., by April 30, July 31, October 31, and January 31) after the Date of Lodging, Defendant shall submit a

quarterly report to EPA and IDEM for the preceding quarter that shall include, as applicable in the reporting period:

      i.   The status of the permit applications required for the Mist Eliminator;

     ii.   The status of CMS implementation as set forth in Subparagraph b; and

    iii.   The status of implementation of all Mitigation projects provided for in this Consent Decree;

      b.      Until six months after final CMS implementation is achieved, an update on the status of implementation of the CMS, including:

      i.   A description of any Title V Permit monitoring or recordkeeping deficiencies during the reporting period;

     ii.   A Root Cause Analysis of any Title V Permit monitoring or recordkeeping deficiencies that occurred during the reporting period; and

    iii.   A description of the steps taken to prevent similar deficiencies from occurring in the future;

    iv.   After July 31, 2022, data reflecting values of daily measurements of the Mist Eliminator Pressure Drop Parameter during operation of the Mist Eliminator, and a record of all times during which the RTO was operating and the Mist Eliminator was not operating and the reasons why.

      c.      The quarterly report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the likely cause of the non-compliance and of the remedial steps taken or to be taken, to prevent or minimize such non-compliance. If the cause of non-compliance cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the non-compliance and shall then submit an amendment to the report, including a full explanation of the cause of the non-compliance within 30 Days of the day Defendant becomes aware of the cause of the non-compliance. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XII of this Consent Decree

(Force Majeure).

        d.      Quarterly reporting shall continue until termination of this Consent

Decree.

      54.     Whenever any violation of this Consent Decree or of any applicable permits or

any other event affecting Defendant's performance under this Decree may pose an immediate

threat to the public health or welfare or the environment, Defendant shall notify EPA by

contacting Dakota Prentice by telephone at (312) 886-6761 or by email at

prentice.dakota@epa.gov and IDEM by contacting Janusz Johnson, Branch Chief by telephone

at (317) 233-1134 or by email at jjohnson@idem.in.gov as soon as possible, but no later than 24

hours after Defendant first knew of the violation or event. This procedure is in addition to the

requirements set forth in the preceding Paragraph.

      55.     Each report submitted by Defendant under this Section shall be signed by an

official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

      56.     This certification requirement does not apply to emergency or similar

notifications where compliance would be impractical.

      57.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by the CAA or implementing regulations, or by any other

federal, state, or local law, regulation, permit, or other requirement.

58.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## XI.  STIPULATED PENALTIES

59.     Defendant shall be liable for stipulated penalties to the United States and the State of Indiana for violations of this Consent Decree as specified below, unless excused under Section XII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

60.     <u>Late Payment of Civil Penalty</u>. If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late.

61.     <u>Violation of Permit Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements under Paragraph 14:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

62.     <u>Operation of Mist Eliminator</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement imposed in Paragraphs 20 and 21:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

63.     <u>Compliance with Mist Eliminator Pressure Drop Parameter</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Paragraph 19 of this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th Day |
| $4,500 | 15th through 30th Day |
| $13,500 | 31st Day and beyond |

Stipulated penalties under this Paragraph 63 shall not accrue for deviations from the Mist Eliminator Pressure Drop Parameter during startup, shutdown, or malfunction events as defined in 40 C.F.R. Part 63.2 or if the response steps in Paragraph 19 were taken.

64.     <u>Compliance Management System Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement imposed in Section VI.D (Compliance Management System) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $3,500 | 15th through 30th Day |
| $8,000 | 31st Day and beyond |

65.     <u>Mitigation Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement imposed in Section VII (Mitigation) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $5,000 | 31st Day and beyond |

66.     <u>Transfer of Ownership</u>. If Defendant fails to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States at least 30

28

Days prior to any transfer of any portion of the Facility; or (c) provide to EPA an executed copy of the written agreement with the transferee as required by Paragraph 5, Defendant shall pay a stipulated penalty of $10,000 per occurrence.

67.     Other Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of this Consent Decree for which a stipulated penalty is not specified in Paragraphs 60 through 66 above:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

68.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. The number of Days of a particular violation is calculated as the total Days on which a violation occurred but shall reset to Day 1 if compliance is achieved between violations and Defendant demonstrates that the violations are not due to the same cause. For example, in the case of a violation that occurs for 34 Days, ceases for several Days and then resumes due to a different cause, the stipulated penalty for the first Day on which the violation resumes shall be calculated as Day 1 of the violation.

69.     Defendant shall pay any stipulated penalties to the United States and the State within 30 Days of a written demand. Defendant shall pay 50% percent of the total stipulated penalty amount due to the United States and 50% percent to the State.

70.      The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

71.     Stipulated penalties shall continue to accrue as provided in Paragraph 68, during any Dispute Resolution, but need not be paid until the following:

        a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA or the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States or the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

        b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

        c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

72.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 9 and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation the penalties are being paid. Defendant shall pay stipulated penalties owing to the State by certified check or checks or cashier's checks made payable to "Environmental Management Special Fund" referencing the name and address of the party making payment, and the civil action number. Defendant shall contact IDEM's counsel to arrange the wire transfer or send the check(s) to: Indiana Department of Environmental Management Cashier – MC 50-10C 100 North Senate Avenue Indianapolis, IN 46204-2251.

73.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties accruing from the date the payment was due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

74.     The payment of penalties and Interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

75.     <u>Obligations Prior to the Effective Date</u>. Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Paragraphs 15 through 25 that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

76.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XII. FORCE MAJEURE

77.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

78.　If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice to EPA by contacting Dakota Prentice by telephone at (312) 886-6761 or by email at prentice.dakota@epa.gov and IDEM by contacting Janusz Johnson, Branch Chief by telephone at (317) 233-1134 or by email at jjohnson@idem.in.gov, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA and IDEM an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

79.    If EPA, after a reasonable opportunity for review and comment by IDEM, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by IDEM, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

80.    If EPA, after a reasonable opportunity for review and comment by IDEM, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

81.    If Defendant elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 77 and 78. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIII.   DISPUTE RESOLUTION

82.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism for Defendant to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

83.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends DOJ, EPA, and IDEM a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

84.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ, EPA, and IDEM a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

85.     The United States will send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall

include, but need not be limited to, any factual data, analysis, or opinion supporting that position

and any supporting documentation relied upon by the United States. The United States'

Statement of Position is binding on Defendant, unless Defendant files a motion for judicial

review of the dispute in accordance with the following Paragraph.

86.    <u>Judicial Dispute Resolution</u>. Defendant may seek judicial review of the dispute by

filing with the Court and serving on the United States and the State a motion requesting judicial

resolution of the dispute. The motion: (a) must be filed within ten Days of receipt of the United

States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue

not raised in informal dispute resolution pursuant to Paragraph 83, unless the Plaintiffs raise a

new issue of law or fact in the Statement of Position; (c) shall contain a written statement of

Defendant's position on the matter in dispute, including any supporting factual data, analysis,

opinion, or documentation; and (d) shall set forth the relief requested and any schedule within

which the dispute must be resolved for orderly implementation of the Consent Decree.

87.    The United States shall respond to Defendant's motion within the time period

allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent

permitted by the Local Rules.

88.    <u>Standard of Review.</u>

a.    <u>Disputes Concerning Matters Accorded Record Review</u>. Except as

otherwise provided in this Consent Decree, in any dispute brought under Paragraph 84 pertaining

to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any

other items requiring approval by EPA under this Consent Decree; the adequacy of the

performance of work undertaken pursuant to this Consent Decree; and all other disputes that are

accorded review on the administrative record under applicable principles of administrative law,

Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 84, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

89.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 71. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI (Stipulated Penalties).

## XIV.   INFORMATION COLLECTION AND RETENTION

90.     The United States, the State, and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.     obtain samples;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

91.     Upon request, Defendant shall provide EPA and IDEM or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and IDEM shall provide Defendant splits of any samples taken by EPA or IDEM.

92.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

93.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to EPA or IDEM. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the

subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

94.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

95.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XV.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

96.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the Date of Lodging.

97.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 96. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

98.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 96.

99.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, 42 U.S.C. § 7661, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

100.    This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

101.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XVI.  COSTS

102.    The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States and the State shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any

stipulated penalties due but not paid by Defendant.

## XVII.  NOTICES

103.    Unless otherwise specified in this Decree, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and sent by

mail or email, (with a preference for email), addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12360 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-12360 |
| As to EPA by email: | Dakota Prentice<br>Prentice.dakota@epa.gov<br><br>Cathleen Martwick<br>Martwick.cathleen@epa.gov<br><br>R5ardreporting@epa.gov |
| As to the State: | Attorney General's Office<br>Blake T. Erickson |

                                                Blake.Erickson@atg.in.gov

As to Defendant:               Rick Duda
Vice President, Associate General Counsel
Ingredion Incorporated
5 Westbrook Corporate Center
Westchester, IL 60154
rick.duda@ingredion.com

Justin Curtis
HeplerBroom
2929 Carlson Drive, Suite 304
Hammond, IN 46323
Justin.Curtis@heplerbroom.com

104.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

105.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVIII.  EFFECTIVE DATE

106.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIX.  RETENTION OF JURISDICTION

107.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XIII (Dispute Resolution) and XX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XX.   MODIFICATION

108.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

109.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XIII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 88, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXI. TERMINATION

110.    After Defendant has completed the requirements of Section VI (Compliance Requirements), has thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of two years, has complied with all other requirements of this Consent Decree, including those relating to the State SEP required by Section VIII (State Supplemental Environmental Project) and has paid the civil penalty and any accrued stipulated penalties and Interest as required by this Consent Decree, Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

111.    Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with

the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

112.     If the United States, after consultation with the State, does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XIII (Dispute Resolution). However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 120 Days after service of its Request for Termination.

## XXII.  PUBLIC PARTICIPATION

113.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXIII.  SIGNATORIES/SERVICE

114.     Each undersigned representative of Defendant and the Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division, and the State of Indiana certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Parties he or she represents to this document.

115.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIV.  INTEGRATION

116.    This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXV.    FINAL JUDGMENT

117.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

## XXVI. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

118.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of Section VI (Compliance Requirements), Paragraphs 14–31; Section VII (Mitigation), Paragraphs 32–39; Section X (Reporting Requirements), Paragraphs 53–58; and Section XIV (Information Collection and Retention), Paragraphs 90 are restitution, remediation, or required to come into compliance with the law.

## APPENDICES

119.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the map for the Paving Mitigation Project.

.

Dated and entered this 26th day of February, 2024

_____

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk

BY: _Dina M. Doyle_____

Deputy Clerk, U.S. District Court

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and State of Indiana v. Ingredion Incorporated</u> (S.D. Ind.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

11/17/2023
_____
Date

_____
PEDRO SEGURA
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
(202) 532-3153
pedro.segura@usdoj.gov


ZACHARY A. MYERS
United States Attorney
Southern District of Indiana

J. TAYLOR KIRKLIN
Assistant United States Attorney
United States Attorney's Office
10 W Market St, Suite 2100
Indianapolis, IN 46204
taylor.kirklin@usdoj.gov

46

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and State of Indiana v. Ingredion Incorporated</u> (S.D. Ind.)

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

ROBERT
KAPLAN           Digitally signed by ROBERT KAPLAN
                 Date: 2023.11.05 10:24:52 -06'00'

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5 (C-l 4J)
77 West Jackson Boulevard
Chicago, IL 60604

CATHLEEN         Digitally signed by
                 CATHLEEN MARTWICK
MARTWICK         Date: 2023.11.01
                 14:16:21 -05'00'

CATHLEEN R. MARTWICK
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

47

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and State of Indiana v. Ingredion Incorporated</u> (S.D. Ind.)

_10/17/2023_
Date

PATRICIA ORLOFF ERDMAN
Chief Counsel of Litigation
Office of the Attorney General
Indiana Government Center South, 5th Floor
402 West Washington Street
Indianapolis, Indiana 46204

_9/29/23_
Date

BRIAN C. ROCKENSUESS
Commissioner
Indiana Department of Environmental Management

48

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States</u> <u>and State of Indiana v. Ingredion Incorporated</u> (S.D. Ind.)

20 SEPTEMBER 2023
Date

FOR INGREDION INCORPORATED:

ERIC SEIP
Senior Vice President – Global Operations
Ingredion Incorporated
5 Westbrook Corporate Center
Westchester, IL, 60154
(708) 551-2821
E-mail: eric.seip@ingredion.com

# APPENDIX A

Case 1:23-cv-02111-RLY-KMB   Document 10   Filed 02/26/24   Page 52 of 52 PageID #: 184

Appendix A: Facility Maps
Facility Maps with Planned Mitigation Paving Segments Shown
Company Name: Ingredion Incorporated Indianapolis Plant
Source Address: 1515 S. Drover Street, Indianapolis, IN 46221

| Road Segment | Unpaved | Route Color |
|---|---|---|
| Employee and contractor parking Drover) | X | |
| Contractor Yard | X | |
| Gate 6 Entrance | X | |
| Contractor Pass Through | X | |
| Starch Truck Staging | X | |

Raymond Facility

Drover Facility





Ingredion Indianapolis
Prepared by Trinity Consultants